1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   MARCUS WHITAKER,                    )   Case No.: 1:11-cv-01252-LJO-JLT
                                         )
12            Petitioner,                )   FINDINGS AND RECOMMENDATIONS TO
                                         )   DENY PETITION FOR WRIT OF HABEAS
13        v.                             )   CORPUS (Doc. 1)
                                         )
14   WARDEN VIRGA,                       )   ORDER DIRECTING THAT OBJECTIONS BE
                                         )   FILED WITHIN TWENTY-ONE DAYS
15            Respondent.                )
                                         )   ORDER DIRECTING CLERK OF THE COURT TO
16                                       )   SUBSTITUTE THE NAME OF JEFF MACOMBER
                                         )   FOR WARDEN VIRGA AS THE PROPER
17                                       )   RESPONDENT
18   _____ )

19          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

20   pursuant to 28 U.S.C. § 2254.

21                              **PROCEDURAL HISTORY**

22          In 2008, Petitioner was convicted of first degree murder during the attempted commission of a

23   robbery, attempted robbery, robbery, and being a felon in possession of a firearm.  He was sentenced

24   by the Merced County Superior Court to an indeterminate sentence of life without the possibility of

25   parole.  He remains in the custody of the California Department of Corrections and Rehabilitation.

26   (Doc. 57, Ex. A).

27          Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the

28   "5th DCA"), which affirmed Petitioner's conviction on June 8, 2010.  (Doc. 57, Ex. A).   Petitioner then

1  filed a petition for review in the California Supreme Court that was summarily denied.  (Lodged

2  Document ("LD") 6).

3       Petitioner filed the instant petition which contained two unexhausted claims.  Thus, the Court

4  granted him leave to withdraw the unexhausted claims (Docs. 46; 47) and Petitioner proceeds here only

5  as to the remaining claims. Respondent answered the amended petition[1] (Doc. 57) to which Petitioner

6  filed his Traverse.  (Doc. 62).

7  **FACTUAL BACKGROUND**

8       The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[2]:

9      After listening to music at a nightclub in Merced, Javier Mendoza, Antonio Miranda, and his
   brother Jose Miranda drove home and parked, and then "some guys jumped out, one on one
10 side and two on the other," from a car that parked behind them. A man with a rifle demanded
   money from Javier, who gave him the money from his wallet. The other two men demanded
11 money from Jose, who yelled, "No money, no money." Shots rang out. The men drove off.
   Jose lay dying on the ground.

12     A jury found Marcus Dion Whittaker guilty of, inter alia, murder during the attempted
13 commission of a robbery. On appeal, he argues an evidentiary issue, two instructional issues,
   and ineffective assistance of counsel. We affirm the judgment

14

15 (Doc. 57, Ex. A, pp. 2-3).

16 **DISCUSSION**

17 I.    Jurisdiction

18      Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to

19 the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the

20 United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n.

21 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States

22 Constitution.  The challenged conviction arises out of the Merced County Superior Court, which is

23 located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

24      On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

25 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v.

26

27 [1] Though Respondent does not contend that the two are not fully exhausted he argues that ground two is procedurally
   barred.  (Doc. 57 , p. 2)
28 [2] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).
   Thus, the Court adopts the factual recitations set forth by the 5th DCA.

Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

II.    Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of  the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings.  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a

3

1   federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted

2   in a decision that was based on an unreasonable determination of the facts in light of the evidence

3   presented in the State court proceeding." <u>Wiggins v. Smith</u>, 539 U.S. at 520; <u>Jeffries v. Wood</u>, 114

4   F.3d at 1500.  A state court's factual finding is unreasonable when it is "so clearly incorrect that it

5   would not be debatable among reasonable jurists."  <u>Id.</u>; <u>see</u> <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001

6   (9th Cir. 2004), <u>cert.denied</u>, <u>Maddox v. Taylor</u>, 543 U.S. 1038 (2004).

7          To determine whether habeas relief is available under § 2254(d), the federal court looks to the

8   last reasoned state court decision as the basis of the state court's decision.  <u>See</u> <u>Ylst v. Nunnemaker</u>,

9   501 U.S. 979, 803 (1991); <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we

10  independently review the record, we still defer to the state court's ultimate decisions."  <u>Pirtle v.</u>

11  <u>Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

12         The prejudicial impact of any constitutional error is assessed by asking whether the error had

13  "a substantial and injurious effect or influence in determining the jury's verdict."  <u>Brecht v.</u>

14  <u>Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>see also</u> <u>Fry v. Pliler</u>, 551 U.S. 112, 119-120 (2007)(holding

15  that the <u>Brecht</u> standard applies whether or not the state court recognized the error and reviewed it for

16  harmlessness).

17         **III.  Review of Petitioner's Claims.**

18         The petition alleges the following as grounds for relief: (1) denial of due process when the trial

19  court admitted evidence of a prior uncharged robbery; (2) trial error in instructing the jury with

20  CALCRIM No. 375 without also giving a specific limiting instruction on the use of the prior

21  uncharged robbery; and (3) ineffective assistance of trial counsel in failing to request a specific

22  limiting instruction regarding the prior uncharged robbery.

23         A.  <u>Admission of Prior Uncharged Robbery</u>

24         Petitioner first contends that his due process right to a fair trial was compromised by the trial

25  court's admission of evidence of a prior uncharged robbery.  The Court disagrees.

26              1.  The 5th DCA's Opinion.

27  The 5th DCA rejected Petitioner's claim as follows:

28      Whittaker argues that the admission of evidence of a prior uncharged robbery was an abuse of
        discretion and a denial of due process. The Attorney General argues the contrary.

4

Before trial, Whittaker filed a motion, on the authority of Evidence Code sections 352 and 1101, subdivision (a), to "exclude prejudicial propensity evidence" of an armed robbery of a taco truck in Merced two days before the commission of the charged crimes. On the authority of Evidence Code section 1101, subdivision (b), the prosecutor filed a motion in limine to admit evidence of the crime on issues of motive, intent, and common plan or scheme. Whittaker filed supplemental points and authorities characterizing the evidence at issue as "inherently prejudicial."

At the hearing on the motions, the court disclaimed the possibility of admissibility on the issues of motive or intent and narrowed the inquiry solely to admissibility on the issue of common plan or scheme. The court noted "a good deal of similarity" between the two cases since both involved African–American perpetrators, Hispanic victims, and a firearm, occurred within only a day or two of each other, and shared two of the same perpetrators (one of whom was Whittaker). Characterizing the issue more as one of weight than of admissibility, the court noted "sufficient similarities" between the two crimes and, citing Evidence Code sections 352 and 1101, subdivision (b), found the prior more probative than prejudicial on the issue of common plan or scheme.

At trial, several witnesses, some testifying inconsistently, some testifying reluctantly, some testifying under grants of immunity, established, inter alia, that a woman who was paid to drive for a robbery took Whittaker and Raymond Brown, both African–Americans, both armed with firearms, to the taco truck where, with a gunpoint threat to "pop" someone if he did not cooperate, they took cash, clothing, jewelry, and other property from three Hispanic men. Police searching Whittaker's residence recovered property from the taco truck robbery.

As the last of those witnesses, a former detective, had almost finished testifying, Whittaker objected on the ground that the prosecutor's last question was "interfusing the current case with the prior." Sustaining the objection, the court characterized the prosecutor's question about "the robbery/homicide that these two men were involved in" as "threading [sic ] very dangerously close to jury confusion and prejudice." The prosecutor withdrew the question, both parties finished examining the witness, and the court, stating that the instruction the jury was about to hear would appear in the final instructions, too, read the following version of CALCRIM No. 3.75 modified to address common plan or scheme:

> "The People have presented evidence that the defendant committed the offense of robbery that was not charged in this case. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the robbery.

> "Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

> "If the People have not met this burden, you must disregard this evidence entirely.

> "If you decide that the defendant committed the uncharged offense, you may, but are not required to consider that evidence for the limited purpose of deciding whether or not the defendant had a plan or scheme to commit the offenses alleged in this case.

> "In evaluating this evidence consider the similarity or lack of similarity between the uncharged offense and the charged offenses. Do not consider this evidence for any other purpose except for the limited purpose of determining whether the defendant had a plan or scheme to commit the offenses alleged in this case.

> "Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime.

5

"If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of the charged offenses.

"The People must still prove each element of the charges beyond a reasonable doubt.

"Once again, I give you this instruction with regard to evidence that has been introduced just recently in this case. I will read this instruction to you along with the bulk of the instructions at the conclusion. And I'm sure counsel may refer to it in their arguments to you at the conclusion of the case."

Before deliberations commenced, the court again gave CALCRIM No. 375 as so modified in the final instructions. After trial, Whittaker filed a new trial motion on the basis of the evidence of the prior. The prosecutor opposed the motion. The court denied the motion.

The crux of Whittaker's challenge appears to be that the prior and the charged crimes were "too dissimilar to support evidence of a common plan" and, even if not, that the prior was irrelevant since identity was "the only issue in the present case." Neither aspect of his argument is persuasive. As to the first, the evidence is dispositive of the requisite similarity. Both perpetrators of the gunpoint robbery of the three Hispanic men in the prior were perpetrators of the gunpoint robbery and attempted robberies of the three Hispanic men in the charged crimes. The perpetrators who committed the prior and the charged crimes alike targeted the victims at night, gained control of the victims by the element of surprise, and used a vehicle not only to approach the victims but also to flee the crime scenes.

To establish the existence of a common plan or scheme, "the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual." (People v. Ewoldt (1994) 7 Cal .4th 380, 403 (Ewoldt), superseded by statute on another ground as stated by People v. Britt (2002) 104 Cal.App.4th 500, 505.)  For example, "evidence that the defendant has committed uncharged criminal acts that are similar to the charged offense may be relevant if these acts demonstrate circumstantially that the defendant committed the charged offense pursuant to the same design or plan he or she used in committing the uncharged acts. Unlike evidence of uncharged acts used to prove identity, the plan need not be unusual or distinctive; it need only exist to support the inference that the defendant employed that plan in committing the charged offense." (Ewoldt, supra, at p. 403.) So it is here.

The second aspect of Whittaker's argument is ill-conceived. Although the court admitted evidence of the prior on the issue of common plan or scheme, the evidence was not, as he implies, somehow irrelevant to the issue of identity, since his plea of not guilty put at issue all the elements of the charged crimes, on each and every one of which the prosecutor had the burden of proof. (People v. Balcom (1994) 7 Cal.4th 414, 422–423.) "[B]y not disputing that the charged act occurred and raising only an alibi defense, [he] narrowed the prosecution's burden of proof," he professes. "But the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense." (Estelle v. McGuire (1991) 502 U.S. 62, 69.) There is no requirement that a defendant dispute an element of a crime before a prosecutor may introduce relevant evidence on the issue. (People v. Ellers (1980) 108 Cal.App.3d 943, 953.)

The deferential abuse of discretion standard of review applies to a ruling on the admissibility of evidence of an uncharged prior. (People v. Hoyos (2007) 41 Cal.4th 872, 898; Ewoldt, supra, 7 Cal.4th at p. 405.)  Our conclusion that Evidence Code section 1101 does not require the exclusion of the evidence of Whittaker's uncharged prior does not end our inquiry, however, since the potential prejudice of such evidence requires that its admission receive additional careful analysis. (Ewoldt, supra, at p. 404.)

6

First, the evidence of Whittaker's uncharged prior was not as strong as, and was less inflammatory than, the evidence of his charged crimes. That decreased the potential for prejudice. Second, Evidence Code section 352 uses the word "prejudice" to refer not to the damage that probative evidence naturally causes to a defense (<u>People v. Karis</u> (1988) 46 Cal.3d 612, 638) but rather to the "etymological sense of 'prejudging' a person or cause on the basis of extraneous factors" (<u>People v. Farmer</u> (1989) 47 Cal.3d 888, 912, overruled on another ground in <u>People v. Waidla</u> (2000) 22 Cal.4th 690, 724, fn. 6). His prior did not prejudge him in that way.

Our careful analysis of the record discloses no abuse of discretion. Since the premise implicit in Whittaker's due process argument is that the court's ruling was an abuse of discretion, his constitutional argument is equally meritless. (<u>See People v. Sanders</u> (1995) 11 Cal.4th 475, 510, fn. 3.)

(Doc. 57, Ex. A, pp. 4-9).

2.  <u>Federal Standard</u>.

The United States Supreme Court has expressly left open the question of whether the admission of propensity evidence violates due process.  <u>See</u>  <u>Estelle v. McGuire</u>, 502 U.S. at 75, n. 5; <u>see</u> <u>Holgerson v. Knowles</u>, 309 F.3d 1200, 1202 (9th Cir.2002) (habeas relief not warranted unless due process violation clearly established by the Supreme Court); <u>Garceau v. Woodford</u>, 275 F.3d 769, 774 (9th Cir. 2001), *reversed on other grounds*, <u>Woodford v. Garceau</u>, 538 U.S. 202 (2003)(the Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith...").  In this regard, in <u>Holley v. Yarborough</u>, 568 F.3d 1091 (9th Cir. 2009), the Ninth Circuit explained as follows:

The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ [of habeas corpus] should be issued when constitutional errors have rendered the trial fundamentally unfair [Citations], it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.

<u>Holley</u>, 568 F.3d at 1101.  Hence, as a preliminary matter, the state courts' rejection of Petitioner's claim *could not* have been "contrary to, or an unreasonable application of, clearly established" United States Supreme Court authority, since no such "clearly established" Supreme Court authority exists.  28 U.S.C. §  2254(d)(1).

However, even if the foregoing were not true, to the extent Petitioner contends the state court violated California Evidence Code § 1101 in admitting the challenged evidence, Petitioner's claim sounds in state law and is therefore not cognizable in federal habeas proceedings. As discussed previously, federal habeas corpus court has no authority to review a state's application of its own laws,

1    but rather must determine whether a prisoner's constitutional or other federal rights have been violated.

2    Estelle v. McGuire, 502 U.S. at 67-68; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990).  Generally,

3    the admissibility of evidence is a matter of state law, and is not reviewable in a federal habeas corpus

4    proceeding.  Estelle, 502 U.S. at 67; Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir.), *cert. denied,*

5    478 U.S. 1021 (1985).

6          Nevertheless, there can be habeas relief for the admission of prejudicial evidence if the

7    admission was fundamentally unfair and resulted in a denial of due process.  Estelle, 502 U.S. at 72.

8    However, the failure to comply with state rules of evidence alone is neither a necessary nor a sufficient

9    basis for granting federal habeas relief on due process grounds.  Jammal v. Van de Kamp, 926 F.2d

10   918, 919-920 (9th Cir. 1991).  Only if there are no permissible inferences that the jury may draw from

11   the evidence can its admission rise to the level of a due process violation.  Id. at 920.

12          3.  Analysis.

13          Here, Petitioner has failed to show that no permissible inferences existed that the jury might

14   draw from the challenged evidence; accordingly, it does not rise to the level of a federal claim and is,

15   therefore, simply an issue of state law.[3]   At the very least, the challenged evidence was probative of

16   Petitioner's intent to commit a robbery against the victim by showing evidence of a common plan or

17   scheme with a similar uncharged armed robbery two days earlier.  The Court need not speculate further

18   about permissible bases for admission of this propensity evidence as intent alone is a sufficient basis.

19   Houston v. Roe, 177 F.3d 901, 910 n. 6 (9th Cir. 1999).

20          Under California law, prior uncharged criminal acts are admissible to show a common plan or

21   scheme when "the common features …indicate the existence of a plan rather than a series of similar

22   spontaneous acts, but the plan thus revealed need not be distinctive or unusual…." (People v. Ewoldt, 7

23   Cal. 4th 380, 403 (1994).  Further, evidence of prior misconduct "committed with persons other than the

24

25   _____
     [3] Merely placing a "due process" label on an alleged violation does not entitle Petitioner to federal relief.  Langford v. Day,
26   110 F.3d 1386, 1388-89 (1996).  Broad, conclusory allegations of unconstitutionality are insufficient to state a cognizable
     claim. Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995); Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (bald
27   assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary hearing); see also Hiivala v.
     Wood, 195 F.3d 1098, 1106 (9th Cir.1999), citing Gray v. Netherland, 518 U.S. 152, 162-63 (1996) ("general appeals to
28   broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish
     exhaustion).

prosecuting witness…is admissible to show a common design or plan where the prior offenses (1) are not too remote in time, (2) are similar to the offense charged, and (3) are committed upon persons similar to the prosecuting witness." Id. at 397.  Thus, as mentioned, the plan revealed need not be distinctive or unusual, it "only need support the inference that appellant employed that plan in committing the charged offense." People v. Kraft, 23 Cal.4th 978, 1031 (2000).[4]

The Ninth Circuit has upheld the admission of prior crimes or bad acts where (1) there is sufficient proof that defendant committed the prior act; (2) the prior act is not too remote in time, (3) the prior act is similar (if admitted to show intent); (4) the prior act is used to prove a material element; and (5) the probative value is not substantially outweighed by prejudice.  See Walters v. Maas, 45 F.3d at 1357-58 (upholding state admission of prior on federal habeas review); see also United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992), cert. denied, 114 S.Ct. 113 (1993).  All of the above are present in this case.

As the 5th DCA noted in its opinion, the prior uncharged act occurred two days before the crimes in this case, involved the use of a firearm in a robbery of Latino victims, and was perpetrated by Petitioner and at least one associate, both African Americans.  The Court agrees with the state court that this degree of similarity is more than sufficient to satisfy the requirements of Ewoldt.  Indeed, it is unclear how many more relevant indices of similarity could reasonably be expected to exist between the two events.

Moreover, as the 5th DCA pointed out, California Evidence Code § 352 requires the trial judge to balance the probative value of proffered evidence with its potential prejudicial effect.  Such a balancing requirement safeguards due process vis-à-vis the admission of uncharged offenses under Cal. Evid. Code § 1008.  E.g., Mejia v. Garcia, 534 F.3d 1036, 1047, n. 5 (9th Cir. 2008); United States v. LeMay, 260 F.3d 1018, 1026-1027 (9th Cir. 2001).  The record shows that the trial judge conducted just such a balancing analysis pursuant to § 352 before admitting the challenged evidence, concluding that

---

[4]In federal court, evidence of prior bad acts is similarly admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.R.Evid. 404(b). To prove that the evidence is offered for one of these reasons, it is the government's responsibility to show that the evidence (1) proves a material element of the offense for which the defendant is now charged, (2) if admitted to prove intent, is similar to the offense charged, (3) is based on sufficient evidence, and (4) is not too remote in time. United States v. Ramirez-Robles, 386 F.3d 1234, 1242 (9th Cir.2004) (citing United States v. Beckman, 298 F.3d 788, 794 (9th Cir.2002)). The government must also show that the evidence satisfies Federal Rule of Evidence 403 in that its probative value is not outweighed by its prejudicial effect. Id.

the evidence might be "damaging" but was "not necessarily prejudicial" under Cal. Evid. Code sec. 352 because it did not "evoke a strong emotional bias" on the part of the jurors.  (Reporter's Transcript On Appeal ("RT"), Vol. 1, p. 59).

Finally, the court instructed the jurors with CALCRIM No. 375, which told jurors they could consider the prior uncharged act <u>only</u> for a specific purpose and not generally on the question of whether Petitioner had criminal propensities or was a person of bad character.  The state court read that limiting instruction not only when the evidence of the prior robbery was introduced, but also at the end of the trial.

Further, any error in admitting this testimony did not have "a substantial and injurious effect or influence in determining the jury's verdict," and thus was harmless.  <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).  <u>See also Penry v. Johnson</u>, 532 U.S. 782, 793-96 (2001).  As described above, the evidence against Petitioner was substantial, and any threat of improper prejudice flowing from the challenged testimony was mitigated by the trial court's limiting instruction directing the jury to consider the uncharged acts testimony only as it was relevant to show the existence of a common plan or scheme. The jury is presumed to have followed this instruction. <u>Old Chief v. United States</u>, 519 U.S. 172, 196-97 (1997); <u>United States v. Reed</u>, 147 F.3d 1178, 1180 (9th Cir.1998).

B.  <u>Lack of a Limiting Instruction</u>

Petitioner next contends that the trial court erred in instructing the jury with only with CALCRIM No. 375 without giving a proper limiting instruction prohibiting the jury from using the prior uncharged robbery as proof of intent and identity.  This contention is also without merit.

1.  <u>The 5th DCA's Opinion</u>.

The 5th DCA rejected Petitioner's claim as follows:

Whittaker argues that the absence of a sua sponte instruction prohibiting jury consideration of the uncharged prior on issues of identity and intent denied due process and his attorney's failure to request such an instruction was ineffective assistance of counsel. The Attorney General argues Whittaker forfeited his right to appellate review and, alternatively, there was neither a due process denial nor ineffective assistance of counsel.

Preliminarily, we turn to the Attorney General's forfeiture argument. Except in extraordinary cases, a court as a general rule has no duty to give a sua sponte limiting instruction. (<u>People v. Rogers</u> (2006) 39 Cal.4th 826, 864.) A narrow exception to the rule exists where "'evidence of past offenses is a dominant part of the evidence against the accused, and is both highly prejudicial and minimally relevant to any legitimate purpose.'" (<u>Ibid.</u>, quoting <u>People v. Collie</u> (1981) 30 Cal.3d 43, 64.)  Here, the requisite similarity between the evidence of the uncharged

prior and the evidence of the charged crimes, together with the lack of any inflammatory prejudice from the evidence of the uncharged prior, put the case squarely within the general rule, not within the exception.

As Whittaker acknowledges, the record shows that the court twice instructed the jury, first after the prosecution presented evidence of the uncharged prior and again at the end of trial, with a version of CALCRIM No. 375 modified to address common plan or scheme. (Ante, part 1.) As he likewise acknowledges, his attorney neither objected to the instruction nor requested a clarifying instruction. His failure to object to CALCRIM No. 375 and to request a clarifying instruction forfeits his right to appellate review. (People v. Valdez (2004) 32 Cal.4th 73, 113.)

Nonetheless, in the interest of judicial economy, we choose to address the issue on the merits to preclude litigation of Whittaker's ineffective assistance of counsel argument. He argues that "[his] identity in the charged offense was speculative" and that "evidence of [his] complicity in the charged crime was weak," but eyewitness testimony refutes his arguments. Brown's brother-in-law testified he was the owner of the car Whittaker drove to the crime scene with him, Brown, and a man he had never seen as his passengers. After Whittaker, Brown, and the stranger got out, Whittaker went to the driver's side of the other car with a firearm in his hand as Brown and the stranger went to the other side of the other car. Whittaker was the only person with a firearm at the crime scene. After Brown and the other man started struggling with someone inside the other car, the brother-in-law heard Brown say, "Get 'em," saw Whittaker point his firearm into the other car, and heard a shot. As a passenger got out of Brown's side of the other car and walked toward the trunk, Whittaker walked toward the trunk, too. The brother-in-law heard more shots. When Whittaker got back into the brother-in-law's car, he had a firearm in his hand.

By its own terms, CALCRIM No. 375 as modified instructed that, if and only if the jury were to decide Whittaker committed the uncharged prior, the jury was permitted, but not required, to consider that evidence "for the limited purpose of deciding whether or not the defendant had a plan or scheme to commit the offenses alleged in this case." The instruction expressly prohibited the jury from considering that evidence "for any other purpose except for the limited purpose of determining whether the defendant had a plan or scheme to commit the offenses alleged in this case." The standard of review of an instruction challenged on appeal as ambiguous is whether there is a reasonable likelihood that the jury applied the instruction in a way that denied fundamental fairness. (See Estelle v. McGuire (1991) 502 U.S. 62, 72–73 & fn. 3; People v. Clair (1992) 2 Cal.4th 629, 663.) The record shows the contrary.

(Doc. 57, Ex. A, pp. 9-11).

       2.  <u>Federal Standard</u>.

      The issue of whether a jury instruction is a violation of state law is neither a federal question nor a proper subject for habeas corpus relief. <u>Estelle</u>, 502 U.S. at 68 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990). Indeed, federal courts are bound by state court rulings on questions of state law. <u>Oxborrow v. Eikenberry</u>, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989). In addition, "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." <u>Sawyer v. Smith</u>, 497 U.S. 227, 239 (1990), *quoting,* <u>Dugger v.</u>

Adams, 489 U.S. 401, 409 (1989).

In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. See Estelle, 502 U.S. at 72 & n. 4; Boyde v. California, 494 U.S. 370, 380 (1990). However, a determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. See Calderon v. Coleman, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict before granting habeas relief. See id. at 146–47 (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

In determining whether instructional error warrants habeas relief, a habeas court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (quoting Cupp v. Naughten, 414 U.S. 141, 146-47 (1973). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).

In a criminal case, an evidentiary device must not undermine the fact-finder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt. County Court of Ulster County, N. Y. v. Allen, 442 U.S. 140, 156 (1979); In re Winship, 397 U.S. 358, 364 (1970). A permissive inference is one of the most common evidentiary devices, which allows, but does not require, the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. Ulster, 442 U.S. at 157. "Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." Id., 442 U.S. at 157. "A permissive inference violates the Due Process Clause only if the

1    suggested conclusion is not one that reason and common sense justify in light of the proven facts before

2    the jury." Francis v. Franklin, 471 U.S. 307, 314-315 (1985).

3         The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction

4    except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which

5    he is charged." In re Winship, 397 U.S. at 364.  The Supreme Court held that "the Constitution does

6    not require that any particular form of words be used in advising the jury of the government's burden of

7    proof.  Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt

8    to the jury." Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239 (1994).  This standard reduces the

9    chance that an innocent person will be conviction.  In re Winship, 397 U.S. at 362.  Winship does not

10   require that every single fact upon which the jury relies be proven to a reasonable doubt.  Many facts

11   not proven to that standard may, collectively, allow the jury to infer that an element of the crime is

12   proven beyond a reasonable doubt.  To enforce Winship's rule, judges must instruct juries that they

13   cannot return a guilty verdict unless the government has met this burden.  Cool v. United States, 409

14   U.S. 275, 278 (1972).  A jury conviction based upon an impermissibly low quantum of proof violates

15   the jury trial guarantee of the Sixth Amendment.  Sullivan v. Louisiana, 508 U.S. 275, 278 (1993).  A

16   judge can violate a defendant's rights by giving an instruction that undercuts the force of an otherwise

17   proper beyond-a-reasonable-doubt instruction.  See, e.g., Cool, 409 U.S. at 102-103; Sandstrom v.

18   Montana, 442 U.S. 510, 521 (1979).

19        When a jury instruction is susceptible to a reading that would render the verdict unconstitutional

20   and another that would generate a proper verdict, the reviewing court considers the challenged

21   instruction in light of the full jury charge and in the context of the entire trial.  See Naughten, 414 U.S.

22   at 145-147(consider charge as whole); United States v. Park, 421 U.S. 658, 675 (1975)(consider context

23   of whole trial).  The court must then decide whether there is a reasonable likelihood that the jury

24   applied the challenged instruction in an unconstitutional manner.  Estelle, 502 U.S. at 72.  A verdict

25   remains valid if a jury instruction only tangentially undercut a proper beyond-a-reasonable-doubt

26   instruction.  Naughten, 414 U.S. at 149-150.

27              3.  Analysis.

28                   a.  Procedural Bar

13

Respondent contends that Petitioner's claim must be rejected because it is procedurally barred. Respondent points out that, in denying Petitioner's state habeas claim, the state court expressly held that Petitioner's failure to lodge a timely objection regarding a further limiting instruction "forfeit[ed] his right to appellate review." (Doc. 57, Ex. A, p. 10). After reviewing the facts and applicable law, the Court agrees that the claim is procedurally barred.

State courts may decline to review a claim based on a procedural default. Wainwright v. Sykes, 433 U.S. 72, 86–87 (1977). Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546 (1991); see Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Park v. California, 202 F.3d 1146, 1150 (2000) ("A district court properly refuses to reach the merits of a habeas petition if the petitioner has defaulted on the particular state's procedural requirements . . . ."); see also Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935).

This concept has been commonly referred to as the procedural default doctrine. This doctrine of procedural default is based on concerns of comity and federalism. Coleman, 501 U.S. at 730-32. If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750.

The mere occurrence, however, of a procedural default will not necessarily bar a federal court from reviewing claims in a petition for writ of habeas corpus. In order for the procedural default doctrine to apply and thereby bar federal review, the state court determination of default must be grounded in state law that is both *adequate* to support the judgment and *independent* of federal law. Ylst, 501 U.S. at 801; Coleman, 501 U.S. at 729-30.

"For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001) (*citing* Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). "A state law is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the

14

1    determination of whether federal constitutional error has been committed.'"  Park, 202 F.3d at 1152

2    *quoting* Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

3         To be deemed adequate, the state law ground for the decision must be well-established and

4    consistently applied.  Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999).  Although a state court's

5    exercise of judicial discretion will not necessarily render a rule inadequate, the discretion must entail

6    "'the exercise of judgment according to standards that, at least over time, can become known and

7    understood within reasonable operating limits.'"  Id. at 377.

8         California law requires that, with certain exceptions, appellate courts will not consider claims of

9    error that could have been, but were not, raised in the trial court.  Peole v. Vera, 15 Cal.4th 269, 275

10   (1997).  That rule has been deemed both independent of federal law, People v. Williams, 16 Cal.4th

11   153, 208 (1997), and consistently applied.  Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002).

12   Here, the record establishes that defense counsel failed to tender a timely objection to the trial court's

13   failure to issue a specific limiting instruction regarding the prior uncharged robbery.  As a result, the

14   state court's determination that the claim has been procedurally defaulted bars federal review in this

15   case.

16              b.  Merits.

17        Even if the claim were not procedurally barred, it would fail on its merits. As the 5th DCA

18   pointed out, the trial court instructed the jury on CALCRIM No. 375 both during the trial and at the

19   conclusion.  That instruction limited the jury's consideration of the prior uncharged robbery to whether

20   the "[Petitioner] had a plan or scheme to commit the offenses alleged in this case." (Clerk's Transcript

21   On Appeal ("CT"), Vol. 4, p. 701). The instruction forbade jurors from using the prior bad act evidence

22   for any other purpose, including, inter alia, whether Petitioner had a bad character or was disposed to

23   commit crime.  (Id.).  The instruction went on to point out the following:

24        If you conclude that the defendant committed the uncharged offense, that conclusion is only one
          factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the
25        defendant is guilty of Murder, robbery, attempted robbery or possession of a firearm by a felon.
          The People must still prove each element of every charge beyond a reasonable doubt.

26

27   (Id.).  The jury was also instructed on the meaning of "reasonable doubt."  (CT Vol. 4, p. 689).

28   Additionally, a separate instruction expressly reminded the jury that "During trial, certain evidence

1   was admitted for a limited purpose.  You may consider that evidence only for that purpose and for no

2   other."  (<u>Id</u>., p. 694).

3           Considered as a whole, the instructions adequately instructed the jury regarding the burden of

4   proof, the use of prior bad acts evidence, and the need to use that evidence only for the purpose for

5   which it was introduced. The jury is presumed to have followed those instructions, and Petitioner

6   provides nothing except rank speculation in support of his contention that the instruction failed to

7   properly advise the jury. <u>Weeks v. Angelone</u>, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727

8   (2000). Accordingly, the state court decision was not contrary to nor an unreasonable application of

9   clearly established federal law. 28 U.S.C. § 2254(d).  Hence, the claim should be denied.

10          C.  <u>Ineffective Assistance of Trial Counsel</u>

11          Finally, Petitioner claims that trial counsel was ineffective for failing to request a limiting

12  instruction regarding the prior uncharged robbery.  This contention too is without merit.

13              1.  <u>Fifth DCA's Opinion</u>

14          The Fifth DCA rejected Petitioner's claim as follows:

15              The right to counsel protects the due process right to a fair trial not only by guaranteeing
            "access to counsel's skill and knowledge" but also by implementing the constitutional
16          entitlement to an "'ample opportunity to meet the case of the prosecution.'" (<u>Strickland v.
            Washington</u> (1984) 466 U.S. 668, 684–686 (<u>Strickland</u>).) To establish ineffective assistance,
17          the defendant must show that counsel's performance "fell below an objective standard of
            reasonableness" and prejudiced the defense. (<u>Id</u>. at pp. 687–692; <u>People v. Ledesma</u> (1987) 43
18          Cal.3d 171, 216–217 (<u>Ledesma</u>).)  To establish prejudice, the defendant must make a showing
            "sufficient to undermine confidence in the outcome" of a "reasonable probability" that but for
19          counsel's performance "the result of the proceeding would have been different." (<u>Strickland,
            supra</u>, at pp. 693–694; <u>Ledesma, supra</u>, at pp. 217–218.) A reviewing court can adjudicate an
20          ineffective assistance claim solely on the issue of prejudice without evaluating counsel's
            performance. (<u>Strickland, supra</u>, at p. 697.) We do so here. The requisite showing of prejudice
21          is lacking since, even if Whittaker's attorney had objected to CALCRIM No. 375 or requested
            a clarifying instruction, the result of the proceeding would have been the same.

22

23  (Doc. 57, Ex. A, p. 11).

24              2.  <u>Federal Standard</u>.

25          Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth

26  Amendment. <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-405 (1985). To prevail, Petitioner must show

27  counsel's deficient performance fell below an objective standard of reasonableness under prevailing

28  professional norms. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). Also, Petitioner must

establish he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

The question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 129 S.Ct. at 1420. The AEDPA standard is "doubly deferential" because it requires a petitioner to show not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Here, the state court identified the appropriate federal standard by applying Strickland. Thus, the only issue is whether the state court's adjudication, i.e., that defense counsel's representation was not prejudicial, was not contrary to or an unreasonable application of Strickland. For the reasons discussed below, the Court concludes that it was not.

### 3. Analysis.[5]

First, Petitioner has failed to show that counsel's failure to request a further limiting instruction, in addition to CALCRIM No. 375, was deficient. As discussed previously, the Court has concluded that trial court did not err in failing to issue a further limiting instruction and that No. 375 was, considered in conjunction with all of the other instructions given at trial, adequate to advise the jury regarding the proper use and consideration of evidence of prior bad acts. Petitioner does not cite, and the Court is unaware of, any authority requiring defense attorneys to request unnecessary instructions or to make objections to instructions that are lawful and adequate. Thus, reviewing this issue de novo, the Court finds there was no deficient performance.

---

[5] Respondent correctly notes that the 5th DCA declined to address the first prong of Strickland, i.e., deficient performance, because it determined that Petitioner could not meet the second prong, i.e., prejudice. As Respondent correctly points out, where the state court has declined to adjudicate a federal constitutional issue, this Court reviews the issue de novo. Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011)(When it is clear that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo.) Accordingly, the Court will review the first prong of Strickland de novo, and will review the second prong, applying the AEDPA's double deferential standard, as indicated above.

Second, the Court concludes that the state court adjudication was not objectively unreasonable. As discussed, Petitioner was identified at trial as the man with the firearm, and he was seen to have fired multiple shots into the vehicle in which the victim was located.  None of the other perpetrators were armed.  Given all of the evidence, proof of Petitioner's guilt was strong.  The Court sees no likelihood that, had a further limiting instruction been given, that the jury would have returned a more favorable outcome for Petitioner.  Accordingly, this claim should be rejected.

Finally, Respondent's answer points out that the named respondent, Warden Virga, is no longer the warden of the facility at which Petitioner is incarcerated.  The answer requests that the Court order that the current warden, Jeff Macomber, be substituted in as the proper respondent.  (Doc. 57, p. 1).  The Court will grant Respondent's motion to substitute the proper respondent.

## ORDER

Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to substitute "Jeff Macomber" for "Warden Virga" as the proper named respondent in this case.

## RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 21 days after being served with these findings and recommendations, Petitioner may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991); Wilkerson v. Wheeler, 772 F.3d 834, 834 (9th Cir. 2014).


IT IS SO ORDERED.

Dated:   __March 13, 2015__              _____/s/ Jennifer L. Thurston__
                                        UNITED STATES MAGISTRATE JUDGE

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28